John Larué departed this life, in the year 1792, having previously made his last will and testament, in which he appointed Isaac Larue, Robert Hodgin and Philip Philips his executors; and in his will made the following provision : “ f allow so much of my other lands (meaning those which hé had not previously de. vised) to be sold by iny executors, as shall discharge all my lawful debts; but the expence of administration, &c. is to be levied out of my personal estate.” And he devised his estate to be equally divided between his children, Rebecca, since intermarried with George Helm ; Phoebe, since intermarried with James Larue; Margaret, since married to Conrad Waters; and a son, Squire Larue; who all filed this bill, alleging that the testator only owed twenty seven pounds, and that there was no necessity to sell any of the lands therefor; that Isaac Larue had sold two negro men •slaves, worth live hundred dollars, for twenty.six pounds, without any authority ; that the executors had sold to Isaac Larue, one of their body,, 300 acres of land in the county of Shelby, who had sold the same to Caleb Carman, who nowr possessed it; that they had also sold l,400 acres, another tract to William M’Clung ; one other tract of 3,610 acres, and another of 5,900 acres, in Hardin, to the said Philip Philips, one of their body, and joined in a conveyance thereof to a certain Joseph Kirkpatrick, as trustee for Philips, who had re-sold these tracts, and Kirkpatrick had *259 conveyed them to Michael and Charles Campbell, who had again sold and conveyed them to James Rickey, James Buchanan and Robert Johnson; that all these lands were sacrificed at a price far below their value, by the fraud of the executors, and without necessity, and had passed for far greater sums between these subsequent purchasers, all of whom were fully apprized of the fraud of the executors in selling j and that there was no necessity for doing so. They name- the executors of the executors Hodgin and Philips. both of whom had died, the surviving executor of the first testator, Isaac Larue, and all these subsequent purchasers, as parties, and pray a decree for the land against the purchasers, or its value. M? Clung was returned as deceased by the sheriff, and against him no further proceedings were had. Kirkpatrick answered, admitting that he took the conveyance of the tracts’ charged in the bill as having been conveyed to him, as the trustee of Philips, and re conveyed them on the request of Philips, who became security to Michael and Charles Campbell, and denies that he was. apprized of any fraud, and contends the lands were sold for what they would then bring. As to him, the complainants below dismissed the suit The executors of Robert Hodgin answered. Carman, though process was executed upon him, failed to answer, as tln^Secree alleges. Against Isaac Larue, the surviving executor of John Larue, Michael and Charles Campbell, James Dickey, James Buchanan and Robert Johnson, publication was made as non-residents. The caqse, in this state, came on for hearing at the January term 18(6, and the court proceeded to take the bill pro confesso, as to Carman, Isaac Larue, James Dickey, James Buchanan and Robert Johnson, and decreed that the complainants should recover of Isaac Larue, the surviving executor, five hundred dollars, the alleged price of the two negro slaves; that Caleb Carman should convey to the complainants the 30.0 acres in the county of Shelby ; that Dickey, Buchanan and Johnson should convey and surrender the two tracts, one of 3,6 (0 acres, at the mouth of Doe run, and 5,900 acres, on Nolin, in Hardin county ; and that, as to the executors of Robert Hodgin, the bill should be dismissed with costs. Of the other defendants, the complainants were to recover their costs. At the next succeed *260 ing March term, on the application of the complain** ants, a commissioner was appointed to convey the land decreed.
Where the record shows that application has been made within the time allowed bv law to have a decree against absent dé fendants set aside, and ' does not show that it has b'.eii act ed on by the inferior court. \he éo)rt of appeals will, consider it still pending there, and' consequently, no writ' of error will lie
2. At the same term last named, John Johnson and John Beatty, who state themselves to be the grantees of the executors of the aforenamed Robert Johnson, and John Findley and Archibald Beatty, who stated themselves to be the devisees of said Robert, deceased, and the defendants, James Dickey, James Buchanan and Michael Campbell, appeared in court and present, éd their answers, Which the court allowed to be filed, and directed proceedings on the decree to be stayed until the next term, and that cause be then shown why the said decree should not be set aside. Further no. tice.of this application does not appear on the record.
It is assigned for error, that the court erred in setting aside the decree, and this brings the consideration of this order before the court. The defendants, Mi. chael Campbell. Dickey and Buchanan, had been treated by the plaintiffs as non. residents, and publication had been made against them. They were, therefore, entitled, on appearing within seven years, to file, their answers and be heard without prejudice from the former decree. This, however, was to be done on their petition, and subject to such conditions, as to the payinent of costs, or giving security therefor, as the court should impose. It is true, it was not necessary to set aside the decree, to allow them to be heard ; but these, previous conditions were to be fixed by the court; and as it does not appear that ever the court again acted on this subject, or that the final decree disposed of the bill as to these defendants, we must consider the mo. tion, as to these defendants, as still depending and un. determined, and cannot say that their application is yet disposed of in the court below. There are other matters strongly fortifying this conclusion, in addition id the silence of the record. Thfe persons who appeared as the grantees of the executors of Robert Johnson, did not, and have, not yet shown themselves to be such; nor have those who style themselves devisees, proved that to be their true character. Bésides, if Robert Johnson was dead at the rendition of the decree, or the persons who appeared as his devisees and grantees of his executors, were not non-residents, other inodes pf proceeding ‘ might be proper, and other questions *261 might present themselves for the decision of the court below, on which it ought to decide before this court ought to take jurisdiction of the case. Moreover, it is evident that these parties niu not apply as non residents,' but treated the decree as interlocutory, and moved to set it aside as such. As to them, therefore, we consider the application as still pending j and all subsequent proceedings in the cause, not having affected their interest or that of the complainants, with regard to them, and as to these parties, the writ of error must he quashed
A decree die rectingiand to be convey? ed and appointing a commissioner to convey it, is final. If, after final decree in the inferior court, in favor of the complainant? the court permits the decree to be se- aside at a subsequent term, and on answei- filed, and upon 'that answer ultimately dismiss the complainant’s bill, the court of appeals 5vii] reverse a!i such subsequent proeei dings, without any inquiry into the merits of the cause, as made ¡put by bill, answer.
3. At the term next succeeding this last application, Charles Campbell, on whom the process was extent, ed, and as to whom the hill was taken pro confesso. appeared arid filed his petition to set aside the decree and file his answer, alleging the decree to be interlocutory only. The court sustained the application and set aside the decree. The cause then ultimately pro gressed, till the court, by a final decree, dismissed’ the bill.
Wejhave not deemed it necessary to investigate th.e merits of his application, or that of the suit ; because we cannot see how the court below could treat the de cree as interlocutory only, It was certainly final as to the whole contest, and of course that court had no power to set it aside. All that could have led to the supposition that the decree was interlocutory, and Cot final, was, that (he conveyances direeled were not made, and a commissioner was appointed lor that pur pose. All this commissioner had to do, was, ministe. rially to carry the decree into effect. As well might it he said, that if the decree was for money, and the party obtaining it had not coerced the payment by pro cess of contempt, or the sheriff had not collected the money, still the decreet was not final. A decree is final when it decides all the matters in controversy by the decision of the chancellor, and the proceedings to effectuate it do not leave it open to the revision of the same chancellor, by motion.
The order, then, setting aside the decree on the application of Charles Campbell, and all subsequent pro. ceedings, are erroneous, and must be reversed and set aside with costs.